## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Nathan Myer, Stevie Stoltzfus, James Zimmerman, Ella Mae Zimmerman, Loren Nolt and John S. Fisher | : Civil Action No: 10-00715 |
| | : |
| | : |
| v. | : |
| | : |
| The Pennsylvania Society for the Prevention of Cruelty to Animals, Harrise Yaron, Jodi Goldberg, Kristen Sullivan, Nicole Wilson, Main Line Rescue, Inc. and William Smith | : |
| | : |
| | : |

### <u>ORDER</u>

AND NOW, this _____ day of _____, 2010, upon consideration of the

Defendants, Pennsylvania SPCA, Kristen Sullivan and Nicole Wilson's Motion to Dismiss and

Motion to Strike pursuant to Fed.R.Civ.P. 12(f), and any Response thereto, it is hereby

**ORDERED** and **DECREED** that Defendants' Motion is **GRANTED** and Plaintiffs' Complaint

is **DISMISSED** with prejudice.

BY THE COURT:

_____
                                                   J.

04139.00107   26/1456759.v1

**MARSHALL, DENNEHEY, WARNER,**
**COLEMAN & GOGGIN**
**BY:** Christopher Boyle, Sr., Esquire
ID# 93002
620 Freedom Business Center, Suite 300
King of Prussia, PA   19406
(610) 354-8476

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Nathan Myer, Stevie Stoltzfus, James Zimmerman, | : Civil Action No: 10-00715 |
| Ella Mae Zimmerman, Loren Nolt and John S. Fisher | : |
| | : |
| v. | : |
| | : |
| The Pennsylvania Society for the Prevention of Cruelty to | : |
| Animals, Harrise Yaron, Jodi Goldberg, Kristen Sullivan, Nicole | : |
| Wilson, Main Line Rescue, Inc. and William Smith | : |

---

**DEFENDANTS, PENNSYLVANIA SPCA, KRISTEN SULLIVAN AND NICOLE
WILSON'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO
FED.R.CIV.P. 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FED.R.CIV.P. 12(f)**

Defendants, Pennsylvania SPCA, Kristen Sullivan and Nicole Wilson, by and through

their undersigned counsel, Marshall, Dennehey, Warner, Coleman & Goggin and Christopher

Boyle, Sr., Esquire, file this Partial Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and

Motion to Strike pursuant to Fed.R.Civ.P. 12(f) and aver:

1.   Plaintiffs instituted this action by filing a Complaint on or about February 19, 2010.

(A copy of Plaintiffs' Complaint is attached hereto as Exhibit "A").

2.   Plaintiffs' Complaint alleges violation of their civil rights and pendent state tort

claims.

3.   Plaintiffs' Complaint is replete with hyperbole, immaterial, impertinent and

scandalous material, couched as facts.

1

4.   Fed.R.Civ.P. 12(f) permits a Court to strike, "…any redundant, immaterial, impertinent or scandalous matter."

5.   As Plaintiffs have pled that they were never "seized", as a matter of law, claims for malicious prosecution as a matter of both state and federal law, cannot stand.

6.   Plaintiffs' claims against individual Moving Defendants Sullivan and Wilson for "inadequate training" cannot stand as a matter of law, as Plaintiffs have not pled that either of these individuals was responsible for their training, and Plaintiffs have identified the individual Defendants' employer, Pennsylvania SPCA, as a Defendant.

7.   Plaintiffs' claims for invasion of privacy, false light, fail against Moving Defendants, as the Exhibit Plaintiffs have attached in support of their claim, is clearly authored by other than Moving Defendants.  (Exhibit "A" to Plaintiffs' Complaint).

8.   The individual Defendants Sullivan and Wilson are entitled to prosecutorial immunity.

9.   Defendants Sullivan and Wilson are entitled to qualified immunity.

10. Plaintiffs' Monell claims cannot stand as a matter of law.

11. As Plaintiffs have included immaterial, impertinent or scandalous matter in their Complaint, such material should be stricken pursuant to Fed.R.Civ.P. 12(f).

12. For the reasons more fully set forth in the Memorandum of Law, which is attached hereto and incorporated herein by reference, Defendants' Partial Motion to Dismiss/Motion to Strike should be granted.

WHEREFORE, Moving Defendants, respectfully request this Honorable Court dismiss Plaintiffs' Complaint in part; and strike immaterial, impertinent or scandalous matter.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN


BY:     s/Christopher Boyle, Sr.
        CHRISTOPHER BOYLE, SR., ESQUIRE
        ID#  PA93002
        620 Freedom Business Center, Suite 300
        King of Prussia, PA 19406
        (610) 354-8476 Fax (610) 354-8299
        Email:  cpboyle@mdwcg.com
        Attorney for Defendants


DATE:  3/12/10

04139.00107   26/1456759.v1

**MARSHALL, DENNEHEY, WARNER,**
**COLEMAN & GOGGIN**
**BY:** Christopher Boyle, Sr., Esquire
ID# 93002
620 Freedom Business Center, Suite 300
King of Prussia, PA   19406
(610) 354-8476

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Nathan Myer, Stevie Stoltzfus, James Zimmerman, | : Civil Action No: 10-00715 |
| Ella Mae Zimmerman, Loren Nolt and John S. Fisher | : |
| | : |
| v. | : |
| | : |
| The Pennsylvania Society for the Prevention of Cruelty to | : |
| Animals, Harrise Yaron, Jodi Goldberg, Kristen Sullivan, Nicole | : |
| Wilson, Main Line Rescue, Inc. and William Smith | : |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, PENNSYLVANIA SPCA,**
**KRISTEN SULLIVAN AND NICOLE WILSON'S MOTION TO DISMISS PLAINTIFFS'**
**COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6) AND MOTION TO STRIKE**
**PURSUANT TO FED.R.CIV.P. 12(f)**

**I.       FACTUAL BACKGROUND**

Plaintiffs instituted this action by filing a Complaint in the Eastern District of

Pennsylvania, on or about February 19, 2010.  (A copy of Plaintiffs' Complaint is attached hereto

as Exhibit "A").  Plaintiffs concede in their Complaint that the Pennsylvania Society for the

Prevention of Cruelty to Animals ("PASPCA") "…does and is entitled to enforce Pennsylvania

laws pertaining to criminal cruelty to animals…under 18 Pa. C.S. § 5511 through its Humane

Society Police Officers."  (Exhibit "A" at ¶ 16).  Plaintiffs contend, generally, that the filing of

summary animal cruelty charges, by mail, against six Plaintiffs, amounts to violation of their

civil rights pursuant to 42 U.S.C. § 1983, and pendent state claims for malicious prosecution,

invasion of privacy and civil conspiracy (Exhibit "A", generally).

After citation to the Federalist Papers, the Plaintiffs' forty-five page Complaint, describes a dog auction in Baltic, OH on October 7, 2009, in which the six Plaintiffs offered a combined two hundred and seventeen (217) dogs for auction. (Exhibit "A" at ¶¶ 27-33). It is Plaintiffs contention that SPCA Humane Society Officers "drove all night to the sale with trucks" (Exhibit "A" at ¶ 41), and purchased no more than twelve dogs at the "Farmerstown Ohio auction". (Id. at 42).[1] Dogs were purchased for between $275 and $425 each, and some of the animals were transported to Philadelphia by the PASPCA in their trucks, arriving at their Philadelphia Headquarters are 4:00 a.m. on October 8, 2009. (Id. at 41, 43, 45).

Plaintiffs allege that, in a meeting with the Lancaster County Assistant District Attorney, PASPCA representatives disclosed numerous factors amounting to insufficient probable cause for charges against Plaintiffs. (Exhibit "A" at ¶ 48(a-n)). Plaintiffs contend that the PASPCA sought "…to file misdemeanor charges on the dogs purchased at the Ohio auction." (Exhibit "A" at ¶ 55), later conceding that only summary charges were ever filed against the Plaintiffs, in Lancaster County, on November 10, 2009. (Exhibit "A" at ¶ 58). Plaintiffs do not contend, as indeed they cannot, that they were ever taken into custody, or required to appear at any hearing, as they have pled all charges were withdrawn by the PASPCA, prior to any hearing on the summary charges. (Exhibit "A" at ¶ 87).

Plaintiffs have attached two Exhibits to their Complaint. Exhibit "A" to Plaintiffs' Complaint purports to be a "Cincinnati Press Release", which Plaintiffs attribute to all Defendants. (Exhibit "A" at ¶ 68). Be that as it may, the contents of the Exhibit itself establish,

---

[1] While Plaintiffs attempt to assert all claims and factual averments against all Defendants equally, the fact remains that Plaintiffs have named numerous individual Defendants, along with two employers, the Pennsylvania Society for the Prevention of Cruelty to Animals, and the Main Line Animal Rescue. While Moving Defendants do not accept Plaintiffs' assertions that all actions are attributable to all Defendants, they accept Plaintiffs' allegations as pled, as they must, under the standard for a Motion to Dismiss under Fed.R.Civ.P. 12. Be that as it may, where Plaintiffs' pleading, or Exhibits attached thereto, establish distinctive action on the part of other than Moving Defendants, or Moving Defendants themselves, they are noted.

"SOURCE - Main Line Animal Rescue"  (Exhibit "A" to Plaintiffs' Complaint).  Exhibit "B"

purports to be a Philadelphia Inquirer article, dated November 21, 2009, which, like Plaintiff's

Exhibit "A", has no comment from Moving Defendants.  (Exhibit "B" to Plaintiffs' Complaint).

## II.        ALLEGATIONS OF PLAINTIFFS' COMPLAINT[2]

At Count I of Plaintiffs' Complaint, they allege conspiracy pursuant to 42 U.S.C. § 1983

against the Pennsylvania SPCA and Humane Officers Sullivan and Wilson.  At Count II,

Plaintiffs' allege malicious prosecution pursuant to 42 U.S.C. § 1983 and the Fourteenth

Amendment.  At Count III, Plaintiffs allege malicious prosecution as a matter of state law

against the PASPCA and Officers Sullivan and Wilson.  At Count IV, Plaintiffs allege

"inadequate training" pursuant to 42 U.S.C. § 1983 against the PASPCA, Officers Sullivan and

Wilson.  At Count V, Plaintiffs allege "inadequate supervision" pursuant to 42 U.S.C. § 1983

against the PASPCA, Officers Sullivan and Wilson.  At Count VI, Plaintiffs allege common law

conspiracy as a matter of Pennsylvania law, against the PASPCA, Officers Sullivan and Wilson.

Finally, at Count VII, Plaintiffs allege invasion of privacy-false light, under Pennsylvania law, as

against Pennsylvania SPCA, Officers Sullivan and Wilson.

## III.       STANDARD OF REVIEW

When considering a Motion to Dismiss under the Federal Rules, the Court must accept as

true, well pled allegations in plaintiff's Complaint, and construe them in a light most favorable to

the plaintiff.  The court may dismiss the claim if it appears beyond a reasonable doubt, that

plaintiff cannot prove those set of facts in support of a claim which would entitle him to relief.

Labove v. Lalley, 809 F.2d. 220 (3d Cir. 1987).  The court may consider Exhibits attached to the

---

[2] While Plaintiffs allege numerous counts against co-defendants, Moving Defendants address only those claims
addressed to the PASPCA, Officer Sullivan and Officer Wilson.

Complaint, and matters of public record.  <u>Benefit Guarantee Corp. v. White Consol Industries</u>, 998 F. 2d. 1192, 1196 (3d. Cir. 1993).

The Supreme Court has clarified its position on the standard under a Motion to Dismiss, in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  The "no set of facts standard" found in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), has been abrogated in favor of requiring a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."  <u>Twombly</u>, 127 S. Ct. 1974.  As a result of the <u>Twombly</u> holding, plaintiffs must have "nudged [their] claim across the line from conceivable to plausible, or the complaint must be dismissed."  (<u>Id</u>.).

> While a complaint attacked by a Rule 12(b)(6) Motion to Dismiss does not need detailed factual allegations, plaintiff's obligation [under Rule 8(a)(2)] to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and the formulated recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

(<u>Id</u>. at 1964-65) (citations omitted).

The Supreme Court has recently cautioned against bare bones pleading, in <u>Ashcroft v. Iqbal</u>, 2009 U.S. LEXIS 3472 (2009), where the Court held:

> As the Court held in <u>Twombly</u>, 550 U.S. 544, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, Defendant-unlawfully-harmed-me accusation.  <u>Id</u>. at 555…A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not due."  550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertions" devoid of "further factual enhancement."  <u>Id</u>. at 557.

<u>Ashcroft</u>, 2009 U.S. LEXIS 3472 at *28.

As the Court went on to hold, plaintiffs need not prove their case at the complaint stage, utilizing a probability requirement, but rather, must meet a plausibility standard that asks for more than "a sheer possibility that a defendant has acted unlawfully."  <u>Id</u>.

The court does not have to accept every allegation of Plaintiff's Complaint as true.  The court need not credit "bold assertions" or "legal conclusions" in a Complaint, when deciding a Motion to Dismiss.  <u>Burlington Coat Factory SEC Litigation</u>, 114 F. 3d. 1410, 1429-30 (3d. Cir. 1997).  Further, unsupported conclusions and unwarranted inferences need not be accepted as true.  <u>Flannigan v. Shively</u>, 783 F. Supp. 926, 927 (M. D. Pa. 1992).

Federal Rule of Civil Procedure 12(f) permits a Court to strike, "…any redundant, immaterial, impertinent or scandalous matter."

## IV.     LEGAL ARGUMENT

### A.     Motion to Strike

Federal Rule of Civil Procedure 12(f) allows the Court to strike any "redundant, immaterial, impertinent or scandalous matter."  Fed.R.Civ.P. 12(f).  Plaintiffs evince a flair for the dramatic, and a disregard for the rule, at paragraph 1 of their Complaint, citing to the writings of James Madison in the Federalist No. 51, rather than averring either a fact or a conclusion of law, as required.  Plaintiffs "preliminary statement" goes on in a personal attack against Defendants in this matter, referring variously to a desire to "pervert justice" and to "file baseless misdemeanor and summary animal cruelty charges", knowing full well that no misdemeanor charges were ever filed against the Plaintiffs, and that Plaintiffs hyperbole regarding the perversion of justice has no place in their Complaint.  Plaintiffs "preliminary statement" is as immaterial as it is irrelevant and unnecessary, and Defendants respectfully request that it be stricken.

Further, at paragraph 16 of Plaintiffs' Complaint, they make reference to Pennsylvania Society for Prevention of Cruelty to Animals "…generat[ing] gross revenues in excess of $6 million annual as a result of its activities in Pennsylvania."  (Exhibit "A" at ¶ 16).  Without engaging in discussion of the obvious difference between gross and net, the fact remains that the

SPCA is non-profit, and the inclusion of this material is in no way relevant, designed only to create the impression of a multimillion dollar, heartless corporation, rather than the reality of an organization that struggles every year to meet its responsibilities regarding enforcement of Pennsylvania's animal cruelty laws.  Again, Defendants request this material be stricken.

Finally, at paragraph 69 of Plaintiff's Complaint, Plaintiffs contend they were cast in a false light by a publication of a Defendant.  Plaintiffs choose to place themselves in the light of being "the subject of hate and derision in the public", citing as proof, "pages of comments after the publication of subsequent articles", none of which Plaintiffs allege were authored, or in any way published, by Moving Defendants.  (Exhibit "A" at ¶ 69).  Again, Plaintiffs flair for the dramatic is manifest, but has no place in a pleading in this Honorable Court.  Moving Defendants therefore respectfully request the entirety of paragraph 69 be stricken.

### B.    Failure to Allege Seizure

At Counts II and III, Plaintiffs claim that the actions of the Pennsylvania SPCA, and Humane Officers Sullivan and Wilson, amount to malicious prosecution under both federal and state law.  Fatal to each of these claims, is the fact that Plaintiffs have not claimed that they were seized, as a matter of law.  To survive Defendants' Motion to Dismiss, Plaintiffs "must show some deprivation of liberty consistent with the concept of seizure."  Gallo v. City of Philadelphia, 166 F.3d 217 (3d Cir. 1998) quoting: Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995).

The Third Circuit has consistently looked for substantial restrictions on a criminal defendant, to establish that a seizure took place.  For instance, the Plaintiff in Gallo was required to post a $10,000 bond, appear at all Court proceedings, contact pretrial services weekly and had his right to interstate travel restricted.  "We hold that the combination of restrictions opposed upon Gallo, because they intentionally limited his liberty, constituted a seizure." Gallo, 1 F.3d at

225.  The Court referred to their decision under these far more restrictive requirements as a

"close question."  No such combination is present here, where Plaintiffs were mailed a citation,

and had the charges dropped, before they ever had to appear in Court.

Conspicuously absent from Plaintiffs' pleading is any indicia of an actual seizure.  As

Plaintiffs are well aware, the District Magistrate's office mailed the citations to them at their

residence, listing Court dates for hearings on only summary charges.  They were never

handcuffed, never had bail set, never had to contact pretrial services, never had their right to

interstate travel restricted and, in fact, never had to appear before a Court.  See Colbert v.

Angstadt, 169 F.Supp. 2d 352 (E.D. Pa. 2001).  (Even where Plaintiff underwent police

processing at a police station, insufficient basis to find a seizure as a matter of law).

Citing to Gallo, the District Court in Colbert, found the Plaintiff had not met his burden

of establishing a seizure where there were no restrictions placed on his liberty other than the

requirements to appear in Court at a future date.  (Id.)  See also Freeman v. Murray, 163 F.Supp.

2d 478 (M.D. Pa. 2001) (Holding the mere requirement that an accused attend a hearing does not

constitute a seizure); Britton v. Maloney, 196 F.3d 24, 30 (1st Cir. 1999) (Cited by the Colbert

Court for the proposition that a Court date does not establish a seizure); Johnson v. City of

Chester, 10 F.Supp. 2d 482 (E.D. Pa. 1998) (Summary disorderly conduct prosecution, is not a

seizure).

Addressing a similar fact pattern, the District Court has held that a Plaintiff's failure to

allege some deprivation of liberty consistent with a seizure, warrants dismissal of a malicious

prosecution claim:

> Indeed the fact that Plaintiffs were given a date to appear in court
> to address the merits of these citations is insufficient to establish a
> "seizure" within the meaning of the Fourth Amendment.  See
> Colbert v Angstadt, 169 F. Supp. 2d 352, 356 (E.D. Pa.

2001)(police questioning plaintiff about an incident and eventually
receiving a summons to appear at a hearing did not constitute a
"seizure" within the meaning of the Fourth Amendment; see also:
Bristow, 80 F. Supp. 2d at 429 (stating that Fourth Amendment
violation does not occur every time any judicial proceeding
endures)

Reinsmith v Borough of Bernville, 2003 U.S. dist. LEXIS 23701, at *21 (E.D. pa. Dec.

16, 2003).

The Court went on to dismiss plaintiffs' claims for malicious prosecution related to

citations related to care of their dogs, allowing only claims where plaintiffs were actually seized

and charged, to proceed. Id. at *22.  No such claim is present here, where plaintiffs cannot allege

that anything beyond a summary charge was ever lodged against them, and they were never even

required to attend a hearing.

As there was no seizure as a matter of law, Plaintiffs' claims at Counts II and III fail, and

they should be dismissed with prejudice.

### C.      Plaintiffs' Malicious Prosecution Claims Are Improperly Pled Under the Fourteenth Amendment

While Plaintiffs claims for malicious prosecution fail under the proper Fourth

Amendment analysis, they have actually pled these claims under the Fourteenth Amendment.

These claims must be dismissed on this basis as well, as, where the constitution provides an

"explicit textual source of constitutional protection", the claim must be brought under that

provision, and no other.  Reinsmith, at *22 n.5 quoting: Bristow, 80 F.Supp 2d at 429.  Plaintiffs'

claims under the Fourteenth Amendment should be dismissed on this basis as well.

### D.      Plaintiffs' Claim for Invasion of Privacy-False Light, Fail as a Matter of Law

Plaintiffs' claim at Count VI of their Complaint that the actions of the Pennsylvania

SPCA and Humane Officers Sullivan and Wilson amount to invasion of privacy for casting them

in a false light.  Pennsylvania law regarding false light claims is found at Restatement Second of

Torts, § 652(e).  It states:

> One who gives publicity to a matter concerning another that places
> the other before the public in a false light is subject to liability of
> the other for invasion of privacy if:
>
> (a) the false light in which the other was placed would be highly
> offensive to a reasonable person; and
>
> (b) the actor had knowledge of or acted in reckless disregard as to
> the falsity of the publicized matter and the false light in which the
> other would be placed.

Restatement of Second of  Torts, § 652(e).

Plaintiffs allege that contents of a press release, which they have attached to their

Complaint as Exhibit "A", amount to invasion of privacy for false light.  What Plaintiffs fail to

acknowledge, in bringing a sweeping accusation against all of Defendants, is the fact that the

source of the press release is identified therein, as Main Line Animal Rescue.  While the

PASPCA is mentioned by name in the "Cincinnati Press Release", there is nothing in Plaintiffs'

Exhibit to suggest that the release was authored or published by Moving Defendants, PASPCA

or Humane Officers Sullivan and/or Wilson.  In fact, the opposite is true, as the source is clearly

indicated in Plaintiffs' Exhibit, itself.  More importantly, is the fact that none of the Plaintiffs are

mentioned in Co-Defendant's release, such that the only thing linking these six Plaintiffs to Co-

Defendant's press release, is the Plaintiffs' Complaint itself, a matter of public record.

Plaintiff's Exhibit "B" fairs no better, as no information in the article, an article not

authored by Moving Defendants, is attributed to them.  The contents of Plaintiffs' exhibit are a

writing, which speaks for itself.  It is incapable of supporting Plaintiffs' false light claims against

Officer Sullivan, Officer Wilson or the Pennsylvania SPCA.

Either because none of the Moving Defendants is a source of the allegedly defamatory statement, or because that statement makes no reference to the Moving Defendants, Plaintiffs' claims for invasion of privacy-false light, should be dismissed.

**E.     Plaintiffs' Claims of Conspiracy Under Federal and State Law**

With the dismissal of Plaintiffs' malicious prosecution and false light claims, they cannot support claims for civil conspiracy.  As the United States Supreme Court held in Beck v. Prupis, 529 U.S. 494 (2000):  "the mere common plan, design or even expressed agreement is not enough for liability in itself, and there must be acts of a tortuous character in carrying it into execution."  Restatement Second of Torts, § 876, comment b (1977).  See also, Beck, 529 U.S. at 501-502; collecting cases.  Absent an underlying tort, Plaintiffs' claims for civil conspiracy, under either state or federal law, fail, and those claims should be dismissed as well.

**F.     Humane Officers Sullivan and Wilson are Entitled to Prosecutorial Immunity[3]**

Humane Officers, Kristen Sullivan and Nicole Wilson are entitled to prosecutorial immunity, for their actions as described in Plaintiffs' Complaint.  18 Pa. C.S. § 5511 provides:

> (i) POWER TO INITIATE CRIMINAL PROCEEDING-- An agent of any society or association for the prevention of cruelty to animals, incorporated under the laws of the commonwealth, shall have the same powers to initiate criminal proceedings provided for police officers by the Pennsylvania Rules of Criminal Procedure. An agent of any society or association for the prevention of cruelty to animals, incorporated under the laws of this commonwealth, shall have standing to request any Court of competent jurisdiction to enjoin any violation of this section.

It is Plaintiffs' contention that agents of the PASPCA initiated a malicious prosecution of them without probable cause.  (Exhibit "A" at Claim 1 and 3).  They have therefore conceded

---

[3] While it was of course Officer Sullivan who filed the summary citations with the magistrate, as Plaintiffs' Complaint does not differentiate between the actions of Officers Sullivan and Wilson in bringing their claims for malicious prosecution, or an alleged lack of probable cause in the decision to initiate that prosecution, Defendants contend that absolute prosecutorial immunity applies to both.

that Humane Society Officers engaged in a prosecutorial function, consistent with their authority under 18 Pa. C.S. § 5511.  The officers are therefore entitled to absolute prosecutorial immunity, a "right not to stand trial" as a matter of law.  In Re:  Montgomery County, 215 F.3d 367, 373, (3d Cir. 2000).  The defense is properly raised in a Rule 12(b)(6) Motion to Dismiss.  See, e.g., Kulwicki v. Dawson, 969 F.2d 1454, 1461-1462 (3d Cir. 1992).

While starting with the presumption that qualified, rather than absolute, immunity is appropriate Carter v. City of Philadelphia, 181 F.3d 339, 355 (3d Cir. 1999), the Supreme Court has acknowledged the absolute immunity of prosecutors to § 1983 suits.  Imbler v. Pachtman, 424 U.S. 409, 420 (1976).

As a general manner, a prosecutor is absolutely immune from damages in a § 1983 action based on activities that are intimately associated with the judicial phase of the criminal process, such as initiating a prosecution and presenting the state's case.  Yarris v. County of Delaware, 465 F.3d 129 (3d Cir. 2006); See also, Imbler, 424 U.S. at 420.  This immunity extends to the decision of whether or not to prosecute.  Davis v. Rendell, 659 F.2d 374 (3d Cir. 1981). Prosecutors also enjoy immunity from actions for investigatory acts taken to the extent that the securing of information is necessary to a prosecutor's decision to initiate a criminal prosecution. Thomas v. Rendell, 1985 U.S. Dist. LEXIS 14385 (E.D. Pa. 1985) (quoting, Forsyth v. Kleindienst, 599 F.2d 1203 (3d Cir. 1979).

An allegation of a prosecutor's failure to properly investigate before initiating a prosecution, is also conduct within the scope of absolute immunity.  Schrob v. Catterson, 948 F.2d 1402 (3d Cir. 1991).  Immunity extends to acts taken "in preparation for the initiation of judicial proceedings or for trial, and which occur in the course of his role of as an advocate for the state."  Light v. Haws, 472 F.3d 74, 77 (3d Cir. 2007) quoting Yarris, 465 F.3d at 135.

To overcome the presumption of qualified, rather than absolute immunity, a prosecutor must show that he or she was functioning as the state's advocate when performing the action in question.  Yarris, 465 F.3d at 136.  The inquiry focuses on "the nature of the function performed, not the identity of the actor who performed it."  Light, 474 F.3d at 78 (quoting Hughes v. Long, 242 F.3d 121, 125 (3d Cir. 2001)).  Recognizing a tendency of Plaintiffs to hold animosity against prosecutors, the Supreme Court has held:

> Suits against prosecutors for initiating and conducting prosecutions, could be expected with some frequency, for a Defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the state's advocate"; lawsuit would divert prosecutor's attention and energy away from their important duty of enforcing the criminal law; prosecutors would have more difficulty than other officials in meeting the standards for qualified immunity, and potential liability "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper function of the criminal justice system."

Burns v. Reed, 500 U.S. 478, 485-486 (1991) citing Imbler, 424 U.S. at 425, 427-428. The Court has also had occasion to "reaffirm[] that 'acts taken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the state, are entitled to the protections of absolute immunity.'"  Yarris, 465 F.3d at 135, quoting Buckley, 509 U.S. at 273.

While it is Defendants' contention that Plaintiffs were never "seized" as a matter of law, and that their claims fail on this basis, to the extent the Court determines at this stage of the proceedings that there was in fact a seizure, Defendants are entitled to prosecutorial immunity for their decisions related to initiating such a prosecution.

**G.**   **Humane Society Officers Sullivan and Wilson are Entitled to Qualified Immunity**

Should the Court determine Officers Sullivan and Wilson are not entitled to absolute prosecutorial immunity for their actions in initiating prosecution against the Plaintiffs, or that only some of the Defendants' actions are covered by absolute immunity, Defendants contend that they are nonetheless also entitled to qualified immunity, for their investigation of suspected animal cruelty pursuant to 18 Pa. C.S. § 5511. Specifically, it is Plaintiffs' contention that the officers were not authorized to cross state lines, and participate in an animal auction that was open to the public. While it would appear undisputed that Officers Sullivan and Wilson did not initiate a prosecution in the State of Ohio, it is, nonetheless, Plaintiffs' contention that their actions in traveling to another state and participating in the public sales, somehow violated Plaintiffs' rights. Should it be determined that actions leading up to the filing of a summary charge against the Plaintiffs amounts to a constitutional violation, the officers are nonetheless entitled to qualified immunity.

The United States Supreme Court has held that qualified immunity serves to "insulate government officials from liability for assumable damages when the discretionary conduct of that official did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The standard for applying qualified immunity is an objective one. The Supreme Court has instructed that the inquiry must focus on the "objective reasonableness of an official's conduct as measured by reference to clearly established law." (Id.).

The Court further explained, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say official action is protected by qualified immunity unless the very action in question has been

13

declared unlawful, but it is to say that the unlawfulness must be apparent." <u>Anderson v. Creighton</u>, 483 U.S. 635 (1982).

Qualified immunity is an immunity from suit, and not a mere defense to liability. As a general rule, the issue of whether an official is entitled to qualified immunity should be determined prior to trial, as the purpose of qualified immunity is to protect officials and public employees from undergoing the burdens of litigation. <u>Mitchell v. Forsythe</u>, 472 U.S. 511 (1985).

In <u>Hunter v. Bryant</u>, 112 S. Ct. 534 (1991), the Supreme Court recognized that "the qualified immunity standard gives ample room for mistakes of judgment in protecting all but the plainly incompetent or those who knowingly violate the law. This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued." <u>Id</u>. at 137. The question of whether an official is entitled to qualified immunity is not limited solely to determining whether the official violated clearly established law. The United States Supreme Court has repeatedly instructed that an official can be entitled to qualified immunity if that official violated clearly established law, but the violation was "objectively reasonable" based upon the information in his possession at the time of the conduct of which plaintiff complained.

In <u>Saucier v. Katz,</u> 533 U.S. 194 (2001), the Supreme Court explained why a court must conduct an additional level of analysis in determining whether an officer is entitled to qualified immunity:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, [] will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts, but have a mistaken understanding as to whether a particular [action] is legal in those circumstances. If the officer's mistake as to what the law requires

> is reasonable, however, the officer is entitled to the qualified
> immunity defense.

<u>Saucier</u>, 533 U.S. at 205.  If an officer did violate a clearly established right, the court must

determine whether the officer "made a reasonable mistake as to what the law requires."

<u>Carswell</u>, 381 F. 3d. at 242.

Further, the  Supreme Court has recently held that the two step <u>Saucier</u> procedure is no

longer mandatory:

> On reconsidering the procedure required in <u>Saucier</u>, we conclude
> that, while the sequence set forth there is often appropriate, it
> should no longer be regarded as mandatory.  The judges of the
> district courts and the courts of appeal should be permitted to
> exercise their sound discretion in deciding which of the two prongs
> of the qualified immunity analysis should be addressed first in light
> of the circumstances in the particular case at hand.

<u>Pearson v. Callahan</u>, 2009 U.S. LEXIS 591, at *33 (U.S. Jan. 21, 2009).

Proceeding under either of the <u>Saucier</u> steps, first, in determining whether Humane

Society Officers Sullivan and Wilson are entitled to qualified immunity, it is clear that facts as

alleged by Plaintiffs are insufficient to deny qualified immunity to the officers.  As Plaintiffs'

contend:

> The Pennsylvania Society for the Prevention of Cruelty to Animals
> (hereinafter "Defendant PASPCA") is a nonprofit corporation
> organized under the laws of the Commonwealth of Pennsylvania
> and whose registered office is 350 East Erie Avenue, Philadelphia,
> PA.  The PASPCA does and is entitled to enforce Pennsylvania
> laws pertaining to criminal cruelty to animal violations under 18
> Pa. C.S. § 5511 through its Humane Society Police Officers.

(Exhibit "A" at ¶ 16).

Plaintiffs therefore concede the authority of Officers Sullivan and Wilson to investigate

allegations of animal cruelty, such as are alleged in the present matter.  While Plaintiffs may

contend that there was insufficient probable cause to support the summary charge against them,

they have also pled that charges were withdrawn, prior to so much as a hearing.  Officers

Sullivan and Wilson took themselves where the evidence lead, and traveled to the State of Ohio

to investigate an allegation of animal cruelty under 18 Pa. C.S. § 5511, participating in an

auction that was open to the public.  Plaintiffs' contention that prosecution for actions occurring

within the State of Pennsylvania can be avoided by the simple expedient of crossing a state line,

is inconsistent with the law.  To the extent the Court determines at this stage that such

investigative techniques are, or could be, a constitutional violation, Defendants submit that it

would not be immediately apparent to officers in position of Sullivan and Wilson, that their

actions amount to a constitutional violation.  As such, they are entitled to qualified immunity.[4]

## H.    Plaintiffs Cannot Support a Monell Claim

A municipality can be held liable under §1983 only if plaintiffs show that the actions that

were violative of their Civil Rights, implemented a policy, ordinance or custom of the local

government or were committed by an  official high enough in government so that the actions can

fairly be said to represent a government decision.  Monell v. Department of Social Services, 436

U.S. 658, 694 (1978). Further, absent an underlying constitutional violation, Plaintiffs' Monell

claim cannot survive Defendants' motion.

Plaintiff must provide evidence that the government unit itself supported a violation of

plaintiff's constitutional rights.  Bielevich v. Dubinon, 915 F.2d 845, 850 (3rd Cir. 1990);  Monell

436 U.S. at 695.  The United States Supreme Court in Monell held that a Civil Rights Complaint

against a  municipality or its agency must allege:

> 1.  The existence of a custom or a policy of the municipality, which is
>     of such long standing to have the force of law; and

---

[4] To the extent that absolute immunity does not apply to the remainder of Defendants' actions as alleged by
Plaintiffs, they contend that qualified immunity is applicable as well, and spare the Court another recitation of the
facts in support, incorporating them by reference as if set forth here at length.

2. That one of the municipality's employees violated the plaintiff's
   Civil Rights while acting pursuant to this custom or policy.

Id.

Municipalities do not cause constitutional deprivations merely by hiring alleged tortfeasors.  Rather, the complained of injury must be causally linked to a custom or policy of a municipality pursuant to which an employee was acting.  Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996).

The municipality or its agency may be held liable for acts that it has ordered.  Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986).  It also may be liable by virtue of action taken by its own officials when those officials have "the final authority to establish municipal authority with respect to the action ordered."  City of St. Louis v. Paprotnik, 45 U.S. 112 (1988).

Plaintiff must also show a causal link between the alleged custom or policy and the alleged §1983 violation and concomitant harm.  In short, "a municipality can be liable under §1983 only where its policies are the 'moving force behind the violation.'"  City of Canton v. Harris, 489 U.S. 379, 386 (1989) (quoting Monell, 436 U.S. at 694).

Plaintiff has identified no such custom, practice or policy.  To the extent Plaintiff alleges that the actions of the municipal defendant amounts to Monell liability pursuant to a theory of "vicarious liability," this is precisely the theory against which the Supreme Court has consistently warned:

> We have consistently refused to hold municipalities liable under a theory of respondeat superior. See Oklahoma City v. Tuttle, 471 U.S. 808, 818, 85 L. Ed. 2d 791, 105 S. Ct. 2427 (1985) (plurality opinion); id., at 828 (opinion of Brennan, J.); Pembaur, 475 U.S. at 478-479; St. Louis v. Praprotnik, 485 U.S. 112, 122, 99 L. Ed. 2d 107, 108 S. Ct. 915 (1988) (plurality opinion); id., at 137 (opinion of Brennan, J.); Canton v. Harris, 489 U.S. 378, 392, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989).

Bd. of the County Comm's v. Brown, 520 U.S. 397  (1997).

17

Claims of constitutional violations cannot be based on respondeat superior, and require some level of personal involvement by an alleged offender.  To establish personal liability in a §1983 action, Plaintiff must demonstrate that a government official, acting under color of state law, caused the deprivation of a federally protected right.  Hafer v. Melo, 502 U.S. 21, 25 (1991).

There is, of course, a distinction between §1983 claims brought against a public official in his or her personal capacity, as opposed to official capacity.  As explained by the United States Supreme Court, "official capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent."  Kentucky v. Graham, 473 U.S. 159, 166 (1985).

A state actor can be held liable under §1983, only if  the Plaintiff shows that the actions that were violative of his or her civil rights, implemented a policy, ordinance or custom of the state actor, or were committed by an official high enough, so that the actions can fairly be said to represent a government decision.  Monell v. Department of Social Services, 436 U.S. 658, 694 (1978).

To the extent plaintiff's claims can be construed as claims of failure to train, discipline and supervise, they fail, as well.

The Court of Appeals for the Third Circuit has long held that "a failure to train, discipline or control can only form the basis for §1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident, or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate."  Montgomery v. DeSimone, 159 F.3d 120, 127 (3d Cir., 1998);  Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir., 1997);  Freedman v. City of Allentown, 853 F.2d 1111, 1117 (3d Cir., 1988).

More specifically, a plaintiff "must show that a 'reasonable municipal policymaker had knowledge of a pattern of prior incidents or knowledge of similar violations of constitutional rights and failed to take adequate measures to ensure the particular right in question.'" Cacciatore v. City of Philadelphia, 2005 U.S. Dist. Lexis 19064, *1, *6 (E.D. Pa., Sept. 1, 2005) (quoting, Garcia v. County of Bucks, 155 F. Supp. 2nd 259, 268 (E.D. Pa., 2001));  Strauss v. Walsh, 2002 U.S. Dist. Lexis 24717, *1, *10 (E.D. Pa. Dec. 18, 2002);  Altieri v. Pennsylvania State Police, 2000 U.S. Dist. Lexis 5041, *1, *39-40 (E.D. Pa., April 20, 2000).

As Plaintiffs have failed to adequately plead an underlying constitutional violation, their Monell claim should be dismissed with prejudice.  Further, as they have not alleged that individual Defendants Sullivan and Wilson had any policymaking authority, the Monell claims against these individual Defendants, should be dismissed.

## I.     Punitive Damages

Punitive damages are not available against municipal entities and Defendants in their official capacities as a matter of law.  Under § 1983, "in order to obtain such damages, a plaintiff must establish facts of record to prove that the individuals knowingly and maliciously deprived the plaintiff of his civil rights." Ruiz v. Philadelphia Housing Authority, 1998 U.S. Dist. LEXIS 3925 (E.D. Pa. March 17, 1998).  At most, Plaintiffs have alleged that agents of the Pennsylvania SPCA initiated summary charge against the Plaintiffs, that did not result in so much as Court appearance by any Plaintiff.

Further, punitive damages are not available against Pennsylvania SPCA and Officers Sullivan and Wilson under state law.  The Supreme Court of Pennsylvania has adopted the Restatement Second of Torts, § 908 (2), which permits damages for "conduct that is outrageous because of the defendant's evil motives or his reckless indifference to the rights of others." Rizzo v. Haines, 520 Pa. 484 (1989) quoting Restatement Second of Torts, § 908 (2).  A court may

award punitive damages if the conduct was malicious, wanton, reckless, willful, or oppressive. Chambers v. Montgomery, 411 Pa. 339, 344-345 (1963).

Because Defendants' conduct as alleged by Plaintiffs in their Complaint does not meet even their fundamental pleading burden, it is not sufficiently "outrageous" to permit claims for punitive damages against the PASPCA and Humane Society Officers Sullivan and Wilson. Those claims should be dismissed with prejudice.

WHEREFORE, Defendants, Pennsylvania Society for the Prevention of Cruelty to Animals, Humane Society Officer Kristen Sullivan and Humane Society Officer Nicole Wilson, respectfully request their Partial Motion to Dismiss and Motion to Strike be granted, and the Court enter the Order attached hereto.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY:   s/Christopher Boyle, Sr.
CHRISTOPHER BOYLE, SR., ESQUIRE
ID#  PA93002
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
(610) 354-8476 Fax (610) 354-8299
Email:  cpboyle@mdwcg.com
Attorney for Defendants

DATE:  3/12/10

04139.00107   26/1456759.v1

**MARSHALL, DENNEHEY, WARNER,**
**COLEMAN & GOGGIN**
**BY:** Christopher Boyle, Sr., Esquire
ID# 93002
620 Freedom Business Center, Suite 300
King of Prussia, PA   19406
(610) 354-8476

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Nathan Myer, Stevie Stoltzfus, James Zimmerman, | : Civil Action No: 10-00715 |
| Ella Mae Zimmerman, Loren Nolt and John S. Fisher | : |
| | : |
| v. | : |
| | : |
| The Pennsylvania Society for the Prevention of Cruelty to | : |
| Animals, Harrise Yaron, Jodi Goldberg, Kristen Sullivan, Nicole | : |
| Wilson, Main Line Rescue, Inc. and William Smith | : |

### CERTIFICATE OF SERVICE

     I, CHRISTOPHER BOYLE, SR., ESQUIRE, do hereby certify that a true and correct copy of Defendants, Pennsylvania SPCA, Kristen Sullivan and Nicole Wilson's Partial Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and Motion to Strike pursuant to Fed.R.Civ.P. 12(f), was electronically filed with the Court on March 12, 2010 and is available for viewing and downloading from the ECF System. All counsel of record was served via electronic notification.

                    MARSHALL, DENNEHEY, WARNER,
                    COLEMAN & GOGGIN

        BY:    s/Christopher Boyle, Sr.
                 CHRISTOPHER BOYLE, SR., ESQUIRE
                 ID# PA93002
                 620 Freedom Business Center, Suite 300
                 King of Prussia, PA 19406
                 (610) 354-8476 Fax (610) 354-8299
                 Email:  cpboyle@mdwcg.com
                 Attorney for Defendants